UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

NICHOLAS DEMARCO,

        Plaintiff,

v.                                                Case No. 08-CV-143

DONALD A CHOMAS and
PAUL F. CRUMLEY,

        Defendants.

_____

## ORDER

On January 21, 2008, plaintiff Nicholas DeMarco ("DeMarco") commenced an action against the named defendants in Racine County Circuit Court. On February 11, 2008, defendants filed a notice of removal to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §1441(a) and (b) and 28 U.S.C. § 1332(a). On May 27, 2008, defendants served subpoenas on First Banking Center, Peter Wautlet and James Mohr seeking documents relating to DeMarco and several corporate entities. Wautlet and Mohr are apparently DeMarco's accountants and First Banking Center is a bank that may have conducted business with DeMarco. DeMarco moves to quash these subpoenas pursuant to Fed.R.Civ.P. 45(c)(3)(A), or, in the alternative, to limit the scope of the subpoenas to relevant and non-privileged responsive information.

The subpoenas issued to Messrs. Wautlet and Mohr both seek the following information:

> 1. All documents in your possession or control that relate to Nicholas DeMarco from 1999 to the present;
>
> 2. All documents in your possession or control that relate to Analogix, Inc., nLogical, Inc., ALX Holdings, Inc., ALX Holdings, LLC or Varian, Inc. from 1999 to the present.

(Feery Aff., Ex. A and B, Docket #24). The subpoena issued to First Banking Center seeks similar information:

> 1. All documents related to any actual or potential lending relationship between the bank and Nicholas DeMarco, Analogix, Inc., nLogical, Inc., ALX Holdings, Inc., ALX Holdings, LLC or Varian, Inc. from 1999 to the present.
>
> 2. All documents provided to the bank by Nicholas DeMarco, Analogix, Inc., nLogical, Inc., ALX Holdings, Inc., ALX Holdings, LLC or Varian, Inc. related to any actual or potential lending relationship between the bank and Nicholas DeMarco, Analogix, Inc., nLogical, Inc., ALX Holdings Inc., ALX Holdings, LLC or Varian, Inc. from 1999 to the present.
>
> 3. All documents in your possession or control that relate to Nicholas DeMarco, Analogix, Inc., nLogical, Inc., ALX Holdings, Inc., ALX Holdings, LLC or Varian, Inc. from 1999 to the present.

(Feery Aff., Ex. C, Docket #24).

DeMarco argues that the subpoenas in question seek privileged information protected by attorney-client relationships. DeMarco claims that the scope of information sought from DeMarco's accountants is broad enough to include privileged communications between DeMarco, his attorneys and his accountants. In support of this contention, DeMarco submits affidavits to the court from two attorneys who represented DeMarco, as well as from DeMarco himself, stating that they have communicated with DeMarco's accountants for the purpose of rendering

legal advice. (DeMarco Aff. ¶ 3; Beaudry Aff. ¶ 3; Anthony Aff. ¶ 3, Docket #24). DeMarco also contends that he "sought to provide his attorneys with information from his accountants so that his attorneys could provide legal advice . . . ." (Pl.'s Br. 6, Docket #24). Essentially, DeMarco contends that the subpoenas should have included an exception for privileged material. In response, defendants argue that DeMarco has not properly asserted attorney-client privilege because DeMarco has not provided specific information on what might be privileged.

Rule 45 of the Federal Rules of Civil Procedure allows a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(iii)-(iv). Because jurisdiction in this case relies solely on the diversity of the parties' citizenship, Wisconsin state law governs attorney-client privilege. Fed.R.Evid. 501. In Wisconsin, "a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Wis. Stat. § 905.03(2). This privilege extends to communications between the client's representative and the client's attorney. *Id.* Confidential communications are defined as "not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Wis. Stat. § 905.03(1)(d). The Wisconsin Supreme Court has recognized that the attorney-client privilege can be "an obstacle

to the investigation of the truth," and that the privilege should, therefore, be narrowly construed. *Lane v. Sharp Packaging Systems, Inc.*, 640 N.W.2d 788, 797-98 (Wis. 2002).

Here, DeMarco has not demonstrated that the responses of Wautlet and Mohr to defendants' subpoenas require disclosure of privileged materials. While the affidavits attached to DeMarco's motion show that DeMarco's attorneys communicated with DeMarco's accountants, the conclusory assertions made in those affidavits that the communications were made to render legal advice do not establish confidentiality for privilege purposes. *See United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) (holding that a party seeking to invoke attorney-client privilege has the burden of establishing all of its essential elements). Moreover, the attorney-client privilege protects only confidential communications and not necessarily the information underlying those communications. *See generally Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). The confidential nature of any communications that did take place between DeMarco's attorneys and his accountants is speculative at best. However, if during the process of disclosure it becomes apparent that confidential communications would be revealed in responsive materials, the Federal Rules of Civil Procedure provide mechanisms through which the parties may address those communications without court intervention. *See* Fed.R.Civ.P. 26(b)(5) and 45(d)(2). DeMarco also appears to argue, albeit sparingly, that First Banking Center may hold information subject to the attorney-client privilege. However, DeMarco has provided no basis for this assertion.

DeMarco's brief and attached affidavits in support refer only to communications with DeMarco's accountants and not First Banking Center.

DeMarco also argues that the information sought by the subpoenas seek irrelevant information and, therefore, would create an undue burden under Fed.R.Civ.P. 45(c)(3)(A)(iv). DeMarco asserts that the information requested covers nine years of personal tax and financial information, which is too broad given this case's "narrow issue" of the investment relationship that existed between defendants and DeMarco. Defendants respond that the materials sought from DeMarco's accountants are relevant to show the way in which DeMarco treated the monies received from defendants for tax purposes. Defendants also claim that materials sought from First Banking Center may reveal how DeMarco treated capital contributions from other sources, i.e., DeMarco's financial institution.

The court is also obliged to deny DeMarco's motion on the basis of relevance and undue burden. Outside of the context of a party claiming attorney-client privilege or some other personal right, only persons to whom subpoenas are directed have standing to challenge their validity through a motion to quash. *See Hunt Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D.Ill. 1983) (citations omitted); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). Having found that DeMarco has not established that the documents requested in these subpoenas are privileged, the court finds that DeMarco has no standing to challenge the subpoenas on the basis of relevance. Even if DeMarco had properly asserted a personal right in the materials sought, the court is not convinced that DeMarco would meet the

-5-

Case 2:08-cv-00143-JPS   Filed 10/23/08   Page 5 of 7   Document 39

DeMarco's brief and attached affidavits in support refer only to communications with DeMarco's accountants and not First Banking Center.

DeMarco also argues that the information sought by the subpoenas seek irrelevant information and, therefore, would create an undue burden under Fed.R.Civ.P. 45(c)(3)(A)(iv). DeMarco asserts that the information requested covers nine years of personal tax and financial information, which is too broad given this case's "narrow issue" of the investment relationship that existed between defendants and DeMarco. Defendants respond that the materials sought from DeMarco's accountants are relevant to show the way in which DeMarco treated the monies received from defendants for tax purposes. Defendants also claim that materials sought from First Banking Center may reveal how DeMarco treated capital contributions from other sources, i.e., DeMarco's financial institution.

The court is also obliged to deny DeMarco's motion on the basis of relevance and undue burden. Outside of the context of a party claiming attorney-client privilege or some other personal right, only persons to whom subpoenas are directed have standing to challenge their validity through a motion to quash. *See Hunt Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D.Ill. 1983) (citations omitted); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). Having found that DeMarco has not established that the documents requested in these subpoenas are privileged, the court finds that DeMarco has no standing to challenge the subpoenas on the basis of relevance. Even if DeMarco had properly asserted a personal right in the materials sought, the court is not convinced that DeMarco would meet the

burden of showing that the subpoenas are improper. *See generally Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (holding that the burden rests on the objecting party to show why a discovery request is improper). It is true that subpoenas issued pursuant to Rule 45 must seek only relevant information. *See BP Prod. N. Am., Inc. v. Bulk Petroleum Corp.*, No. 07-C-1085, 2008 WL 4066106, at *3 (E.D.Wis. Aug. 27, 2008) (citations omitted). However, DeMarco has not demonstrated that the information sought is irrelevant given the broad scope of relevancy in discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978). Moreover, the court cannot conclude that requests for personal financial records of DeMarco, an owner of the closely held corporate entity at issue in this case, are not reasonably calculated to lead to the discovery of admissible evidence. *See* Fed.R.Civ.P. 26(b)(1). The court notes that the Federal Rules of Civil Procedure provide a means through which First Banking Center, Wautlet and Mohr may object to production of responsive materials. *See* Fed.R.Civ.P. 45(c)(2)(B).

Defendants have also filed a motion to extend discovery deadlines by sixty days. In their motion, defendants assert that they will not be able to complete discovery under the current deadlines because they have delayed seeking further discovery pending the court's decision on plaintiff's motion to quash. The court amended the original scheduling order once on June 30, 2008. The current scheduling order sets a deadline of January 26, 2009, for completion of discovery. As the court stated in its order, no further extensions would be granted. (Order, June

-6-

Case 2:08-cv-00143-JPS   Filed 10/23/08   Page 6 of 7   Document 39

30, 2008, Docket #26). With three months remaining before discovery is due, the court finds no good cause to grant a further extension.

Accordingly,

**IT IS ORDERED** that plaintiff's motion to quash subpoenas (Docket #23) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for extension of time (Docket #35) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 23rd day of October, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge